**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Shawn Douglas Hager,[1]

        Plaintiff,

v.

Washington County and
State of Minnesota,

        Defendants.

Case No. 19-cv-2809 (JRT/DTS)

**REPORT AND RECOMMENDATION**

---

This matter comes before the Court on Plaintiff Shawn Douglas Hager's (1) Complaint for Violation of Civil Rights Under 42 U.SC. § 1983, ECF No. 1 (Complaint); (2) Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2 (IFP Application); and (3) Hager's letter to the Court dated April 21, 2020, ECF No. 10 (Letter Request).  For the following reasons, the Court recommends (1) dismissing Hager's requests for injunctive relief; (2) staying and administratively terminating the Complaint to the extent it seeks damages; and (3) denying the IFP Application and Letter Request as moot.

## I.    BACKGROUND

Hager is a pretrial detainee at the Washington County Law Enforcement Center (WCLEC) in Stillwater, Minnesota.  *See, e.g.*, Letter from Shawn Douglas Hager to Court (March 25, 2020), ECF No. 9.[2]  She presently faces two criminal actions in Minnesota

---

[1] Hager's filings explain that she (1) experiences gender dysphoria; and (2) seeks, among other relief, to be assigned the name Teagen Harper Embridge.  For present purposes, the Court will refer to Hager with female pronouns and use her current legal name.

[2] Hager had the same status when she filed the Complaint.  *See* Compl. 3.  (Because the Complaint is not consecutively paginated, references to it use the page numbers provided by the Court's CM/ECF filing system.)

state court.  In February 2019, authorities charged Hager with three counts of criminal sexual conduct.  *See* Register of Actions, *State v. Hager*, No. 82-CR-19-0794 (Minn. Dist. Ct.) (*Hager I* Docket).  In April 2019, authorities charged Hager with two counts of violating a domestic-abuse no-contact order (DANCO).  *See* Register of Actions, *State v. Hagar*, No. 82-CR-19-1558 (Minn. Dist. Ct.) (*Hager II* Docket).  Hager is presently scheduled to go to trial in the first case in June 2020.  *See* Hager I Docket.  She had been scheduled for a March 2020 trial in the second case, but the state court has apparently postponed the trial because of concerns related to the nationwide COVID-19 pandemic.  *See Hager II* Docket.

The Complaint explicitly names as Defendants both Washington County and the State of Minnesota.  *See* Compl. 1.  In addition to these entities, Hager also suggests that she means to sue various "Detectives, Prosecutors, [and] Public Defenders" associated with these entities, as well as an unspecified "Judge."  *Id.* at 4.  Because Hager does not identify these individuals more specifically, the Court construes all of these defendants as unnamed "John Doe" and "Jane Doe" defendants identified only by their particular occupations.  Hager does not specify whether she intends to sue these various individuals in their individual capacities, their official capacities, or both.

The Complaint is not entirely clear, but it appears to raise concerns that the investigation leading up to Hager's being charged did not comply with constitutional norms.  *See, e.g.*, *id.* at 7 (discussing Hager's interrogation by police); *id.* at 9 (complaining of "aggressive persecution"); *id.* at 10 (list of claimed "violations, damages, losses, and suspicions that [Hager's] children and [she] have suffered through").  She further asserts that unnamed public defenders and an unnamed judge made comments in her presence that were disrespectful given her gender dysphoria.  *See id.* at 7.  She

also repeatedly maintains her innocence of the crimes with which she has been charged.

*See, e.g. id.* at 7–8.

The Complaint's requests for relief are wide-ranging.

- First, Hager asks for various forms of relief that, roughly speaking, demand things from various Minnesota judicial and police-related authorities that relate to state-court actions against Hager or her children. *See id.* at 10. These include that (1) "[a]ll judicial orders and criminal charges against [Hager be] dropped"; (2) "[a]ll, if any, related resulting convictions against [her be] overturned and expunged"; (3) "[a]ll, if any, related legal actions against [Hager's] daughter . . . [be] ceased"; (4) "[Hager's] legal and physical custody of [her] son . . . [be] restored"; (5) "[a]ll, if any, listings or postings claiming [Hager] or [her] children as criminals or offenders of any kind omitted"; (6) "[a]ll false claims of [Hager's] fictitious conditional release omitted, if not done so already";[3] and (7) "[Hager's] criminal points removed." *Id.* at 10.
- Second, Hager asks for approximately $1,136,000 in monetary damages as "reparations" for alleged violations of her constitutional rights. *Id.* She indicates that this money would be for her children's living needs for two years, payment for "deformity corrections and gender transformation needs," her child-support contribution to a former partner, as well as various "company startup and income needs." *Id.*; *see also id.* at 15 (providing more-detailed accounting). The sum also appears to include an estimated attorney fee of about $379,000 for Hager herself. *Id.* at 10.[4]
- Third, Hager makes numerous injunctive-relief requests that are not directly related to any ongoing state-court proceedings. These include that (1) Hager's "legal sex" should be "changed from that of a male to a female"; (2) her legal name should be changed; (3) her religious status should be changed to Wiccan; (4) her "identity changes and . . . appearance transformations" should "be made known to [her] children, to any of [her] descendants to come, and to all else whom it may concern regarding family matters and legal business"; (5) numerous changes be made to Hager's "identification profiles and documents"; and (6) a company be registered for her, with various company-related items (e.g., the company's "name, brands, trademarks, patents, copyrights, bank accounts, business

---

[3] The reference to a "fictitious conditional release" appears to concern an incident when Hager contacted the Neighborhood Justice Center (NJC), presumably seeking representation in her state-court criminal matters. *See id.* at 7. During an intake interview, Hager alleges, NJC staff asked her "about a conditional release that actually never happened." *Id.*

[4] Hager also suggests that this damages amount may be insufficient. She suggests that any of several sorts of expenses that she might incur in the future should be "funded in addition to [her] reparations account." *Id.* at 10.

accounts," etc.) "created and updated to match [certain] details" that Hager lists. *Id.* at 11–14.[5]

On April 27, 2020, the Court received Hager's Letter Request. *See* Ltr. Request 1. The letter basically repeats the Complaint's request that this Court dismiss the state criminal cases pending against Hager. *See id.*

## II.   ANALYSIS

### A.   Screening Standards and IFP Application

Hager did not pay this action's filing fee; instead, she filed the IFP Application. *See generally* IFP Appl. When Hager filed this action, she was being "detained" in a facility and was "accused of . . . violations of criminal law." *See* 28 U.S.C. § 1915(h); *see also* Envelope, ECF No. 1-2 (showing Hager's address when Complaint filed). As a result, while she is a pretrial detainee, she is nevertheless a "prisoner" for purposes of the Prisoner Litigation Reform Act. *See id.*; *see also, e.g.*, *Banks v. Hornak*, 698 F. App'x 731, 736 (4th Cir. 2017) (finding that pretrial detainee qualifies as "prisoner" under § 1915(h)); *Jones v. Mack*, No. 18-CV-0518 (JB), 2019 WL 1811056, at *1 n.1 (S.D. Ala. Apr. 3, 2019), *report and recommendation adopted*, 2019 WL 1810995 (S.D. Ala. Apr. 24, 2019) (same); *Lewis v. Dart*, No. 17-CV-4181, 2018 WL 3630158, at *3 (N.D. Ill. July 31, 2018) (same (citing *Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004))).

After reviewing the IFP Application, the Court concludes that Hager qualifies for *in forma pauperis* (IFP) status. Furthermore, while a prisoner proceeding IFP normally must pay an initial partial filing fee, a prisoner with "no assets and no means by which" to pay

---

[5] Some items in these categories seem to overlap. For instance, Hager declares at one point that she "require[s] medical coverage and fee sponsorship for [her] deformity corrections [and] gender transformation procedures," but then also seeks a monetary payment covering the same things. *Compare id.* at 12 *with id.* at 15. For simplicity, the Court construes the Complaint such that, when such apparent overlap occurs between a damages claim and an injunctive-relief request, Hager means to make a damages request.

such a fee can nevertheless bring a civil action without paying it (subject to paying the full

filing fee later in installments). *See* 28 U.S.C. § 1915(b)(2), (b)(4). Hager qualifies as a

prisoner with "no assets and no means." *See, e.g.*, Cert. of Authorized Prison Official,

ECF No. 6.

Under Federal Rule of Civil Procedure 12(h)(3), however, "[i]f the court determines

at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." If

a prisoner IFP applicant files a complaint over which this court lacks jurisdiction, the

court—as part of dismissing the action—may deny the IFP application as moot. *See,*

*e.g.*, *Hudson v. Gyolai*, No. 19-CV-2492 (PAM/DTS), 2020 WL 2044705, at \*5 (D. Minn.

Apr. 15, 2020), *report and recommendation adopted*, 2020 WL 2042903 (D. Minn. Apr.

28, 2020); *Bethune v. Indep. Sch. Dist. 196*, No. 19-CV-3122 (JRT/HB), 2020 WL

1558156, at \*2 (D. Minn. Feb. 27, 2020), *report and recommendation adopted*, 2020 WL

1550728 (D. Minn. Apr. 1, 2020).

**B.    Inappropriate Injunctive-Relief Requests**

As a threshold point, the Court will address the Complaint's requests for relief. As

noted above, these are extensive, raising the question whether some of Hager's

requested relief is appropriate for this action. For three reasons, the Court believes most

of the requested injunctive relief is inappropriate here, and thus recommends dismissing

those requests.

1.    Requests on behalf of others

First, some of Hager's injunctive-relief requests seek relief for other people—in

particular, his children. For instance, Hager asks this Court to have "[a]ll, if any, related

legal actions against [her daughter] ceased," and to have "[a]ll, if any, listings or postings

claiming . . . [that her children are] criminals or offenders of any kind omitted." Compl. 10.

This raises the issue of whether Hager can seek relief on behalf of her children.

The relevant rules here are clear: Under 28 U.S.C. § 1654, a party "can plead and conduct [her] own cases personally." But nonlawyer parents cannot represent their own children. *See, e.g.*, *Buckley v. Dowdle*, No. 08-1005, 2009 WL 750122, at *1 (8th Cir. Mar. 24, 2009) (citing *Myers v. Loudoun Cty. Pub. Sch.*, 418 F.3d 395, 401 (4th Cir. 2005)); *Horst v. Abused Adult Res. Ctr.*, No. 1:19-CV-243, 2020 WL 1466199, at *2 (D.N.D. Mar. 26, 2020) (citing cases); *Noethe v. Reg'l Health Network, Inc.*, No. 18-CV-5082 (JLV), 2020 WL 998942, at *1 (D.S.D. Mar. 2, 2020) (same). Hager gives no indication that she is an attorney. As a result, she cannot represent her children in this action, and so cannot seek the relief requested on their behalf. The Court thus recommends that these requests for relief be dismissed without prejudice.

2.    Unripe requests

Second, some of Hager's requested injunctive relief aims at events that Hager believes are hypothetical. Here, the Court is thinking of Hager's requests for the Court to "overturn[] and expunge[]" "all, *if any*, related resulting convictions against [her]"; to "omit[]" "[a]ll, *if any*, listings or postings claiming" that Hager is a "criminal[] or [an] offender[] of any kind"; and to "omit[]" any "false claims of [Hager's] fictitious conditional release, *if not done so already*." Compl. 10. The italicized portions of each of these requests indicate that, at present, Hager is unsure whether any relevant convictions, listings, postings, or claims actually exist.

Whatever other problems this Court would have in addressing these requests, this Court likely has no jurisdiction over them—they appear to be unripe. Under the ripeness doctrine, courts should avoid issuing rulings on "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580–81 (1985) (quoting 13A Charles Alan Wright et al., Federal Practice and Procedure § 3532 (1984)); *see also Wilson v. O'Brien & Wolf, LLP*, No. 17-

6

CV-1885 (SRN/SER), 2018 WL 296074, at *4 (D. Minn. Jan. 4, 2018) (making same point

(quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).   The doctrine's "'basic

rationale is to prevent the courts, through premature adjudication, from entangling

themselves in abstract disagreements.'" *Thomas*, 473 U.S. at 580 (quoting *Abbott Labs.*

*v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v.*

*Sanders*, 430 U.S. 99, 105 (1977)); *see also Wilson*, 2018 WL 296074, at *4 (observing

same rationale (quoting *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d

1032, 1037 (8th Cir. 2000))).

Here, the Court concludes that to the extent that Hager seeks relief aimed at

hypothetical future events, those requests for relief are unripe.[6]  The Court thus concludes

that it lacks jurisdiction over those requests for relief, and so recommends that they be

dismissed without prejudice.

### 3.      Inappropriately tailored requests

Even after excluding the two categories of relief requests above, an extensive list

remains.  That list's breadth raises the question of just what link this injunctive relief has

to the Complaint's claims.

---

[6] Case law indicates that in making a ripeness determination, a court must "'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *United States v. Gates*, 915 F.3d 561, 563 (8th Cir. 2019) (quoting *Texas*, 532 U.S. at 300–01).  "'The fitness prong safeguards against judicial review of hypothetical or speculative disagreements.'  The hardship prong considers whether delayed review 'inflicts significant practical harm' on the petitioner." *Id.* (quoting *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014).  For the fitness prong, the speculative nature of the penalties that Hager posits means that adjudicating the relief requests at issue here would force the Court to guess at future events.  These issues simply are not ready for current review.  As for the hardship factor, it appears that none of the penalties that Hager is trying to forestall is causing her any hardship now.  Indeed, most of problems that she seeks to address through these relief requests will emerge only if she is convicted in her state-court proceedings.  As a result, the Court concludes there is little practical harm in delaying review of these requests for relief until after Hager's trial concludes and the verdict's implications are clear.

The U.S. Court of Appeals for the Eighth Circuit has repeatedly held that "[a]n injunction must not be broader than necessary to remedy the underlying wrong." *Walmart Inc. v. Cuker Interactive, LLC*, 949 F.3d 1101, 1112 (8th Cir. 2020) (quoting *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 790 (8th Cir. 2004) (internal quotation marks omitted)); *see also Gerlich v. Leath*, 861 F.3d 697, 709–10 (8th Cir. 2017) (quoting same portion of *Purdy*).  In a similar vein, the Eighth Circuit has warned that "[a]n injunction must be tailored to remedy specific harm shown." *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) (quoting cases).

Fundamentally, Hager's claims in this action challenge the investigations and prosecutions relevant to Minnesota actions No. 82-CR-19-0794 and No. 82-CR-19-1558. Conceptually, the Court understands the link between that challenge and certain types of injunctive relief that Hager seeks.  For instance, whatever other problems it has, Hager's request that this Court order state authorities to "drop[]" all judicial orders and criminal charges against her flows naturally from a challenge to the state-court actions.  The Court sees similar connections between this matter's focus and Hager's requests that any convictions she receives in those actions be "overturned and expunged," and that her "criminal points [be removed]."

But many of Hager's remaining injunctive-relief requests are not tailored to the alleged wrong of faulty investigations and prosecutions.  To take but one example, Hager seeks to have this Court create a variety of corporate entities for her, to assist her in being self-employed in various pursuits.  *See* Compl. 14.  The Court understands that Hager would like to have these things done, but this request plainly is not tailored to remedying Defendants' alleged wrongs.  Similar problems befall all of the injunctive relief identified above as being "not directly related to any ongoing state-court proceedings" (that is, the third category of relief requests noted in Section I above).  The Court thus concludes that

8

all of these injunctive-relief requests for injunctive relief be dismissed without prejudice.

In addition, Hager's request to regain custodial rights over her son might be directly

related to some pending Minnesota state-court proceeding; Hager does not make this

clear.  But here again, this Court concludes that intervening in custody proceedings is not

relief tailored to address the investigation- and prosecution-related wrongs that Hager

alleges.  As a result, the Court recommends that this injunctive-relief request also be

denied without prejudice.

4.      Summary

Before discussing the rest of this action, the Court will specify exactly what

injunctive-relief requests get past the three hurdles discussed above.  By the Court's

check, only two do: Hager's requests (1) that "[a]ll judicial orders and criminal charges

against [her be] dropped," and (2) that her "criminal points" be removed.  And this can be

simplified further.  The Complaint does not attribute any "criminal points" to some other

investigation or prosecution, so the Court construes the request for criminal-point removal

as essentially another way to request that any pending judicial orders and criminal

charges against Hager be dropped in cases No. 82-CR-19-0794 and No. 82-CR-19-1558.

This means that as a practical matter, this case now features only one injunctive-relief

request: Hager's request that this Court intervene in cases No. 82-CR-19-0794 and No.

82-CR-19-1558.  The Court will now address the Complaint as simplified—that is, as

raising this one injunctive-relief request as well as Hager's request for damages.

C.      *Younger* Abstention

Under so-called Younger abstention—named after *Younger v. Harris*, 401 U.S. 37

(1971)—federal courts should abstain from exercising jurisdiction in an action when

(1) there is an ongoing state judicial proceeding, (2) which implicates important state

interests, and (3) there is an adequate opportunity to raise any relevant federal questions

9

in the state proceeding. *See, e.g.*, *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Smith v. Hennepin Cty. Fam. Ct.*, No.19-CV-3100 (DSD/BRT), 2020 WL 1930555, at *2 (D. Minn. Mar. 24, 2020), *report and recommendation adopted*, 2020 WL 1923219 (D. Minn. Apr. 21, 2020) (reciting similar test (quoting *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013))).

Applying these three factors is straightforward in this case. This action plainly overlaps with two ongoing state judicial proceedings—namely, Hager's two pending criminal actions in Minnesota state court. Those state proceedings implicate important state interests—specifically, a state's ability to impose and administer its own criminal laws. And to the extent Hager wants to challenge the relevant investigations and prosecutions, the Court sees no reason why she cannot raise any relevant issues in those state-court proceedings. In the Court's view, then, *Younger* abstention is appropriate.

*Younger* abstention affects Hager's injunctive-relief claim and the damages claim differently. For the injunctive-relief claim—that is, Hager's request for this Court to intervene in the state-court criminal actions—*Younger* abstention requires the Court to dismiss the claim for lack of jurisdiction. *See, e.g.*, *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1251 (8th Cir. 2012) (citing *Beltran v. California*, 871 F.2d 777, 782 (9th Cir. 1989)); *Carlson v. Cty. of Ramsey*, No. 16-CV-0765 (SRN/BRT), 2016 WL 3352196, at *6 (D. Minn. June 15, 2016) (citing cases), *aff'd*, 673 F. App'x 601 (8th Cir. 2017). The Court therefore recommends that Hager's request that "[a]ll judicial orders and criminal charges against [her be] dropped" be dismissed without prejudice for lack of jurisdiction.

This leaves Hager's request for damages. The Eighth Circuit has indicated that, to the extent that a damages claim exists in a case where *Younger* abstention applies, the proper disposition is to stay that claim rather than dismiss it. *See, e.g.*, *Yamaha Motor*

10

*Corp.*, 179 F.3d 598, 603 (8th Cir. 1999) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)); *Smith*, 2020 WL 1930555, at *3 (citing cases).  As a result, the Court concludes that the Complaint's damages portion should be stayed until the state-court proceedings in No. 82-CR-19-0794 and No. 82-CR-19-1558 have been completed. The Court further recommends that Hager be ordered to inform this Court when No. 82-CR-19-0794 and No. 82-CR-19-1558 are resolved; she should do so within 30 days of the date of resolution for each case.  The Court also recommends that this action be administratively closed pending Hager informing the Court about the outcomes of No. 82-CR-19-0794 and No. 82-CR-19-1558.

## RECOMMENDATION

Based upon the above, and upon all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    The Complaint filed by Shawn Douglas Hager, ECF No. 1, be **DISMISSED WITHOUT PREJUDICE** to the extent it seeks injunctive relief.

2.    Resolution of the Complaint's remaining claims (i.e., claims for monetary relief) be **STAYED** pending resolution of the state-court cases docketed as *State v. Hager*, No. 82-CR-19-0794 (Minn. Dist. Ct.); and *State v. Hagar*, No. 82-CR-19-1558 (Minn. Dist. Ct.).

3.    Hager be **ORDERED** to inform this Court within 30 days of the date when No. 82-CR-19-0794 and No. 82-CR-19-1558 are resolved.

4.    Hager's Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2, be **DENIED** as moot.

5.    Hager's letter to the Court dated April 21, 2020, ECF No. 10, construed as a motion for this Court to dismiss the pending state-court actions against Hager, be **DENIED** as moot.

11

6.      This case be **ADMINISTRATIVELY CLOSED**.


Dated: May 4, 2020                                    s/David T. Schultz
                                                     DAVID T. SCHULTZ
                                                     U.S. Magistrate Judge


**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).